UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FILED 2008 JUL 22 AM 11:34
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

08 CV 1311 H POR

Edward B. Ewing

    PLAINTIFF,

Vs.                                Case No.

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

    DEFENDANT.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**
**PURSUANT TO RULE 65(b) FEDERAL RULES OF CIVIL PROCEDURE**

    Plaintiff, EDWARD B. EWING (Ewing), *pro se,* hereby files this Memorandum in support of a Motion for an Ex Parte Temporary Restraining Order, enjoining Defendant, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES (Defendant or LOANSTAR) and any other predecessor, agent, assignee, assignor or representative or beneficiary of Loanstar from conducting or effecting a foreclosure sale of Plaintiff's property located at 4082 Vermont Street, San Diego, California 92103, (the Property) now scheduled to take place on Wednesday, July 23, 2008 at 10:30am. In support thereof Plaintiff states:

INTRODUCTION

    Factually, the underlying case in issue concerns real property commonly known as 4082 Vermont Street, San Diego, California 92103. That property was refinanced by Plaintiff on or about July 10, 2006.

    The Mortgage Broker of the transaction was Stonehill Capital, Inc. (Stonehill), a company that does business in the State of California. The initial lender was BNC Mortgage, Inc. (BNC), a Delaware Corporation, a company that does business in the State of California. According to documents made available to Ewing before closing, BNC sells 100% of its mortgages into the secondary market.

    The refinancing of the Property resulted in a number of deceptive and unfair trade practices in violation of the Truth in Lending Act, 15 U.S.C. Sec. 1601, Regulation Z, 6500 CFR

Part 226, the Real Estate Procedures Act, 12 USCA Sec. 2605(b) and other Federal statutes governing lending and mortgages.

Among other things, Stonehill apparently committed a "bait and switch" by telling Ewing that he might or would qualify for a fixed-rate loan to refinance the Property. As stated in the Complaint, Ewing did not have the financial ability to qualify for such a loan, and it was denied. The lender, BNC, then offered Ewing an adjustable rate mortgage, at a high initial rate of interest, in full knowledge of the information on Ewing's loan application, which loan Ewing accepted.

By approving the loan and obtaining a mortgage which it immediately would sell into the secondary market, BNC put itself in the favorable position of making a profit on the loan, without any risk. At the same time, Stonehill was paid its fees and had no further responsibility for the loan. This constituted an unfair and deceptive trade practice under the Truth in Lending Act, *supra*.

Ewing was not given a copy of the signed closing documents at settlement. Ewing was not timely notified of his right of rescission, among other violations and deceptive practices. As the result, Ewing now has three years from the date of the loan in which to exercise that right of rescission. 15 U.S.C. 1635

In addition to the substantial deceptive practices and statutory violations, it is questionable, if not unlikely, since BNC evidently sold the mortgage into the secondary market, that Defendant can establish that it or its represented beneficiary (which entity is unknown to Ewing) is the real party in interest, a necessary condition of the right to foreclose. Ewing is entitled to know who, if anyone, owns the mortgage or if the statutory rights that attach to a mortgage, including the right to exercise foreclosure, exists any longer or whether or not the complex system of fractionalizing loans and converting them to securities destroyed that right.

It must be kept in mind that non-judicial foreclosure, which requires no notice to the Property owner prior to the sale, is an action that flows from the contract between the borrower and the maker of the mortgage. If that chain is broken, as it likely has been here, that foreclosure right no longer exists. Only if this Court stays the foreclosure order entered by the in response to Defendant's pro forma motion under the purported contractual right to foreclose can those issues be resolved and Ewing's rights under the law and contract be preserved.

## EWING HAS MET THE LEGAL STANDARDS FOR GRANTING A TRO

Preliminary relief in the form of a temporary restraining order can be granted without notice [or hearing] when immediate and irreparable injury would result. Fed. R. Civ. P. 65(b). "*Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer" *Granny Goode Foods, Inc. v. Brotherhood of Teamsters & Auto truck Drivers Local No. 70 of Alameda County*, 415 US 423, 429 (1974).

When the requirements of Rule 65 are met and the applicant "sufficiently demonstrates the reason that notice should not be required," an *ex parte* temporary restraining order may be issued. *In re Vuitton et Fils S.A.*, 606 F. 2d 1,4 (2d Cir. 1979) (noting that this relief is particularly appropriate "when it is the sole method of preserving a state of affairs in which the court can provide effective final relief"). Moreover, if notice or a hearing would "render fruitless further prosecution of the action," which is contrary to the intent of the Rule, notice is not necessary for the issuance of a temporary restraining order. *Id.*, at 5. Plaintiffs also are not required to show positively that they will prevail on the merits. A reasonable probability is sufficient. See *Glider v. PGA Tour Inc.*, 936 F. 2d 417, 422 (9th Cir., 1991).

## EWING HAS MET HIS BURDEN OF PROOF REQUIRED BY RULE 65(b)

In this instance, Ewing has shown, in his verified Complaint, that Defendant, its predecessors, agents, assigns or assignors have committed likely violations of Federal laws prohibiting deceptive trade practices and protecting borrowers during the lending process. Ewing has further shown that there is a substantial possibility that the mortgage contract no longer provides Defendant the right to foreclose.

In order for Ewing to have any opportunity to prosecute his Complaint and protect his Property and his rights, the Court must preserve the status quo and enjoin the foreclosure sale of the property. No other form of relief can timely accomplish that purpose and protect Ewing's property rights. Once the Property has been sold, Ewing's rights will be extinguished. Furthermore, if the Property is sold, Ewing will be irreparably harmed by being saddled with a huge debt and his credit will be ruined for years to come.

Finally, Ewing's rights to seek the remedies provided by the various applicable Federal (and potentially state) statutes, including damages and costs will be totally lost.

Ewing requests that the Court issue this temporary restraining order without bond. It must be kept in mind that the issue here is a foreclosure of real property, a remedy that, should

Ewing be unsuccessful, will put a heavy burden on him. At the same time, should Defendant prevail at this juncture, it or its beneficiary will have not been harmed or damaged at all. In fact, given the state of the current real estate market it is even more unlikely that Defendant or its beneficiary will be placed in much jeopardy.

**WHEREFORE,** for all the foregoing reasons, this Court should grant the relief requested and enter the *ex parte* temporary restraining order.

Respectfully submitted,

*/s/ Edward B. Ewing*

Edward B. Ewing, pro se
14251 Anabelle Drive
Poway, CA 92064
Tel: 858-842-4622